IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 13-cv-00259-WJM-BNB

HAL LEWIS HEBERT,

Plaintiff,

v.

TOM CLEMENTS, Executive Director, Colorado Department of Corrections,
JAMES FALK, Warden, Sterling Correctional Facility (SCF),
MICHELLE NYCZ, Major, SCF,
ROBERT KEISEL, Captain, SCF, and
CHASE FELZIEN, Lieutenant, SCF,

Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on the defendants' **Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and (6)** [Doc. #16, filed 04/29/2013] (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED IN PART and DENIED IN PART.

### I.  STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

The standard of review for a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is described as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject
> matter jurisdiction take two forms. First, a facial attack on the

> complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.
>
> However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

## II.  BACKGROUND

The plaintiff is a 71 year old inmate currently incarcerated by the Colorado Department of Corrections ("DOC") at the Sterling Correctional Facility ("SCF").  He filed his Prisoner Complaint on January 31, 2013 [Doc. #1] (the "Complaint").  The Complaint contains the following allegations:

1.  Buildings One, Two, Three, and Four comprise the high security section of SCF. Each building contains three pods.  Each pod contains 54 cells which are arranged in three tiers of 18 cells.  The four buildings contain a total of 648 cells.  *Complaint*, p. 5.[1]

2.  Each cell contains 77 square feet of floor space--"about half the size of an auto parking space."  Within this space, there are two bunk beds, two writing desks, and a steel combination sink/toilet.  Id. at p. 10.  The walls are concrete, and there is one solid steel sliding door with a window that is four inches wide by twenty inches tall.  Id. at p. 16.

3.  Professional organizations recommend that each cell contain 50 - 90 square feet per prisoner.  Id. at p. 10 and App. 8.

4.  SCF has a policy of forcing inmates into double occupancy at all times.  There are no single cells available to general population prisoners.  Id. at pp. 5-6.  Each double-celled prisoner at SCF has 38.5 square feet.  Id. at p. 10.

5.  Double celling has allowed the DOC to overcrowd SCF.  "All of the support facilities at SCF are sized commensurate with a population no greater than half of the current number of inmates.  Classroom, general library, and recreation space are all insufficient, resulting in limited

---

[1]I cite to the page numbers of the Complaint as they are assigned by the court's docketing system.

educational and exercise opportunities." Each day room serves 54 cells. "During free time, between lock downs, inmates can congregate in the day room which is equipped with one TV set and enough tables and benches for fewer than half of the inmates to sit down and play board games and cards. The tables are normally occupied by the strongest inmates, while the weaker ones stand or mill around in the day room, or simply stay in their cells." The law library provides less space and session time per inmate than any other prison in Colorado. Kitchen and dining facilities are inadequate. "In order to hold the overall time required to complete a single feeding down to two hours, each inmate must enter (in a group of 100 or so), wait in line, pick up a tray, find a table, serve himself with a drink, sit down and consume his meal, then remove his tray and exit within twenty minutes" or less. Id. at pp. 11-13. Job and educational opportunities are diminished. Id. at p. 12.

     6. Because more than half of all state inmates have mental illness, inmates are often bunked with mentally ill individuals. Id. at p. 14.

     7. "SCF is the most dangerous place of confinement for inmates in Colorado and prison officials are aware of that fact." Id. at p. 6. "A substantial risk of attack upon an inmate by a cell-mate exists at SCF and such risk is longstanding, pervasive, and well-documented. The defendants know, and have known, of this danger from the very fact that the risk was, and is, obvious." Id. at p. 7.

     8. Inmates in Buildings One through Four face a murder rate 20-25 times higher than the general public and are subject to severe beatings by cell mates at a rate several times greater than the murder rate. Id. at p. 6. "Virtually all of the serious violence within SCF's high-security section (Bldgs. 1-4) is the result of attacks by cell-mates." Id. at p. 7.

9. When the cell door is closed, "no one can see in unless he/she is no further than arm's length from the door." "Even when Corrections Officers make inspection rounds as often as hourly, activities inside the cell are unmonitorable for the great majority of the time." Id. at p. 16.

10. On June 13, 2012, James L. "Buck" Roemer died in his cell. He had been strangled by his cell mate. Mr. Roemer was serving two years for a trespass conviction. Id. at p. 6.

11. Six months before Mr. Roemer's murder, Lyle Brent White was beaten to death by his cell mate. Id. at p. 6.

12. Mr. Roemer and Mr. White's murders were the most recent in a series of homicides that would not have occurred in the absence of double celling. Id. at p. 6.

13. The plaintiff asked for a single cell on August 4, 2012. His request was denied. He filed a grievance regarding the denial of his request on August 22, 2012. Id. at p. 7. Defendant Lt. Felzien attempted to verbally bully the plaintiff into voluntarily withdrawing his request. Defendant Captain Keisel denied the plaintiff's request because there are no designated permanent single cells in SCF's general population. Id. at p. 8.

14. Prior to June 4, 2012, inmates were allowed out of their cells for up to 12 hours each day. On June 4, 2012, defendant Warden Falk imposed a new schedule at SCF which reduced that time to no more than six hours each day. Generally, inmates can leave their cells from 8:30 a.m. to 10:30 a.m.; 2:00 p.m. to 4:00 p.m.; and 7:00 p.m. to 9:00 p.m. Because most inmates are at work or are in class for two of these periods, this schedule is even more restricted than it appears. Prior to June 4, inmates had eight hours per day of "discretionary" time during which they could go to the library, gym, yard, or meetings and get haircuts, take showers, do laundry,

pick up medications, exchange worn out clothing, and pick up cleaning supplies. Under the new schedule, "the accomplishment of all these ordinary tasks is impossible or at best hectic and contributes to the prison's dangerous potential for frustration and tension and anxiety which particularly disfavors the overall mental health of the inmate population." Id. at pp. 13-14.

15. "When the 'discretionary' out-of-cell time is a window of just two hours in a day, prisoners cannot reliably regulate bodily functions in a manner that respects the human sensibilities of a cellmate. When a prisoner is forced by physiology to evacuate his bowels in a closet-size cell before another inmate without benefit of any sort of partition or screen, the resultant experience for both is unpleasantness virtually beyond proper description." Id. at p. 15.

16. In June and July of 2012, the plaintiff wrote a series of letters to DOC officials which advised them of the conditions at SCF which had led to numerous murders and assaults.

17. The plaintiff wrote a letter dated June 23, 2012, to Governor Hickenlooper, with copies to defendant Clements, defendant Falk, and others warning "of the State's liability for injuries and deaths caused by prison officials' inexplicable adherence to dangerous policies of confinement." Id. at p. 9 and Appendix 3. The plaintiff stated that Mr. Roemer was murdered by his cell mate; Mr. Roemer had asked to be moved but his request was ignored; and the risk of harm to Mr. Roemer was obvious. Id. at Appendix 3.

18. A few days later, the plaintiff was taken to an interview room where defendant Major Nycz spoke with him for approximately 45 minutes. Id. at p. 9 and Appendix 3a. Major Nycz told the plaintiff that the "Colorado State Legislature has mandated that SCF shall be 100% occupied, in 100% double-cells, 100% of the time." Id. at App. 3a. Major Nycz would not tell

the plaintiff which Colorado Revised Statute imposed this mandate. Id. at p. 15.

19. On June 27, 2012, the plaintiff wrote a letter to defendant Clements with copies to defendant Falk and others, advising Clements of the overcrowded conditions at SCF and that the new schedule defendant Warden Falk instituted on June 4, 2012, was exacerbating the friction between cell mates. Id. at pp. 9-10 and App. 4.

20. On July 16, 2012, the plaintiff wrote to defendant Falk addressing the violence caused by double celling and the liability of prison officials for the violence.

21. "The defendants unquestionably have knowledge of the substantial risks which prevail at SCF due to forced double-occupancy of cells." Id. at p. 10.

22. The Colorado Prison Law Project, on behalf of SCF prisoners, sent a letter to Clements and others dated September 20, 2012. The letter states that the Colorado Prison Law Project, the Colorado Criminal Justice Reform Coalition, and Colorado CURE "have received numerous complaints from prisoners and their family members concerning the conditions at SCF." The authors requested immediate intervention for the "unconstitutional, unsafe, and inhumane conditions at SCF" including double celling and the effects of the new schedule for out-of-cell time. Id. at p. 10 and App. 6.

The Complaint asserts one claim for violation of the Eighth Amendment. The plaintiff seeks injunctive relief "requiring the . . . defendants to immediately discharge their duty to protect the lives and safety of prisoners or to provide a rational reason for refusal to do so." Id. at 19. He also seeks nominal damages and costs. Id.

## III.  ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State, . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

### A.  Official Capacity Claims

The defendants assert that the plaintiff's claim for damages against them in their official capacities are barred by Eleventh Amendment immunity. The defendants present a facial challenge to the Complaint's allegations. Therefore, I accept the allegations of the Complaint as true. Holt, 46 F.3d at 1003.

The Eleventh Amendment bars suits in the federal courts against unconsenting states by the state's own citizens and by citizens of another state. Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990). Eleventh Amendment immunity "constitutes a bar to the exercise of federal subject matter jurisdiction." Fent v. Okla. Water Res. Bd., 235 F.3d 553, 559 (10th Cir. 2000) (emphasis omitted). Eleventh Amendment immunity applies to suits arising under 42 U.S.C. § 1983. Quern v. Jordan, 440 U.S. 332, 345 (1979).

The Eleventh Amendment precludes federal jurisdiction over state officials acting in their official capacities as to retroactive monetary relief, but not as to prospective injunctive relief. Pennhurst, 465 U.S. at 102-03,105-06. The defendants are employed by the DOC. The DOC is an agency or subdivision of the State of Colorado. Consequently, the Eleventh Amendment bars suit against the defendants in their official capacities for retroactive monetary relief, and the

Motion should be granted to that extent.

### B. Individual Capacity Claims

### 1. Qualified Immunity

The defendants assert that they are entitled to qualified immunity. *Motion*, pp. 13-14. Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

When analyzing the issue of qualified immunity, I consider two factors. I must determine whether the plaintiff has sufficiently alleged a violation of a statutory or constitutional right. In addition, I must inquire whether the right was clearly established at the time of the violation. Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 745 (10th Cir. 1999).[2]

### a. Sufficient Allegations to State an Eighth Amendment Claim

The defendants assert that the plaintiff's Eighth Amendment claim should be dismissed for failure to state a claim upon which relief can be granted. *Motion*, pp. 7-13.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor

---

[2]The order in which I may consider these factors is discretionary. Pearson v. Callahan, 555 U.S.223, 236 (2009). However, both prongs must be satisfied. Herrera v. City of Albuquerque, 589 F.3d 1064, 1070 (10th Cir. 2009).

excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter, and medical care and take "reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quotations and citations omitted). A prison official violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates. Id. at 834.

Therefore, in order to sustain an Eighth Amendment claim that prison officials are ignoring a substantial risk of serious harm, the prisoner must establish both an objective and a subjective component. The objective component requires that the prisoner show that the deprivation alleged is sufficiently serious. To satisfy the subjective component, the prisoner must demonstrate that the defendants acted with deliberate indifference. Id.

Although an inmate "does not have to await the consummation of threatened injury to obtain preventive relief," a plaintiff "must furnish more than a conclusory claim of being afraid." Riddle v. Mondragon, 83 F.3d 1197, 1205 (10th Cir. 1996). To satisfy the first prong of the Farmer test, "[a] prisoner must demonstrate that the deprivation was sufficiently serious and that a prison official's act or omission resulted in the denial of the minimal civilized measure of life's necessities." Grimsley v. MacKay, 93 F.3d 676, 681 (10th Cir. 1996).

Deliberate indifference means that the official "knows of and disregards an excessive risk to the inmate's safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Deliberate indifference lies "somewhere between the

poles of negligence at one end and purpose or knowledge at the other." Id. at 836. "While Estelle[3] establishes that deliberate indifference entails something more than mere negligence, the cases are also clear that it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Id. at 835. An inmate "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842. In addition, although deliberate indifference is a subjective inquiry, a jury is permitted to infer that a prison official had actual knowledge of the constitutionally infirm condition based solely on circumstantial evidence, such as the obviousness of the condition. Id.

"[A] prison official [may not] escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted." Id. at 843.

> The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial "risk of serious damage to his future health," Helling, 509 U.S., at 35, 113 S.Ct., at 2481, and it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk.

Id.

Here, the plaintiff has alleged that double celling is mandatory; the cells have less square footage per prisoner than is recommended by professionals; inmates are required to spend a

---

[3]Estelle v. Gamble, 429 U.S. 97, 104 (1976).

11

significant amount of time in their cells; double celling at SCF is not a temporary condition; double celling has rendered the living arrangements at SCF so overcrowded that it negatively impacts living conditions and increases tension among inmates; and double celling substantially increases the risk of assaults and murders among cell mates. These allegations are sufficient to satisfy the objective prong of the analysis. See Rhodes v. Chapman, 452 U.S. 337, 348 (1981) (finding that double celling did not constitute cruel and unusual punishment because there was no evidence that it increased violence among inmates or created other conditions intolerable for prison confinement); Battle v. Anderson, 564 F.2d 388, 391-92 (10th Cir. 1977) (upholding the district court's finding that an overcrowded inmate population which affected the safety and security of the inmates amounted to cruel and unusual punishment in violation of the Eighth Amendment).

Moreover, the plaintiff has alleged that the increased risk of violence from double celling was obvious; each of the defendants was aware of the substantial risk of violence from double celling; each defendant had the capability to change the double celling policy; and none of the defendants took action to correct the problem. These allegations are sufficient to satisfy the subjective prong. See Farmer, 511 U.S. at 835-43.

Defendants Clements, Falk, and Nycz assert that the claims against them fail to state a claim upon which relief can be granted because the plaintiff does not allege that each defendant personally participated in any of the actions or inactions which violated his constitutional rights. *Motion*, pp. 4-7.

An individual cannot be held liable under section 1983 unless she caused or participated in an alleged constitutional violation. McKee v. Heggy, 703 F.2d 479, 483 (10th Cir. 1983).

Respondeat superior is not within the purview of section 1983 liability. Id. In order to hold a supervisor liable under section 1983, a plaintiff must show that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." Brown v. Montoya, 662 F.3d 1152, 1164 (10th Cir. 2011) (internal quotations and citation omitted). Without a showing of personal involvement in the alleged constitutional violation, liability will not be imposed on a supervisory official. Id. at 1163.

The plaintiff alleges that "[t]he SCF administration staff practices a policy of forcing inmates into double-occupancy of these cells at all times." *Complaint*, p. 5. In the Complaint's description of the parties, the plaintiff alleges that each defendant is vested with executive decision-making authority for the DOC and/or SCF. Id. at pp. 2-3. He further alleges that each defendant was aware of the double celling practice at SCF and the substantial threat of violence (and the actual increased violence) caused by double celling. These allegations are sufficient to allege the personal participation of defendants Clements, Falk, and Nycz.

The plaintiff has sufficiently alleged that, in violation of the Eighth Amendment, the defendants knew that SCF inmates face a substantial risk of serious harm and have disregarded that risk by failing to take reasonable measures to abate it. The Motion should be denied insofar as it seeks dismissal for failure to state a claim upon which relief can be granted.

### b. Clearly Established Rights

The plaintiff's Eighth Amendment rights were clearly established at the time of the alleged violation. Rhodes v. Chapman, 452 U.S. 337, 347-48 (1981) (reversing district court's

finding that overcrowded prison conditions constituted cruel and unusual punishment because there was no evidence that it lead to an increase in violence among inmates or created other conditions intolerable for prison confinement); Battle v. Anderson, 564 F.2d 388, 391-92 (10th Cir. 1977) (upholding the district court's finding that an overcrowded inmate population which affected the safety and security of the inmates amounted to cruel and unusual punishment in violation of the Eighth Amendment); Garcia v. Miera, 817 F.2d 650, 657 (10th Cir. 1987) (stating that the test of what law is clearly established requires "some but not precise factual correspondence" between the precedent establishing law and the case on review, and demands that defendants apply "general, well developed legal principles").  The Motion should be denied insofar as it seeks dismissal of the plaintiff's claims on the basis of qualified immunity.

### 2. Compensatory Damages

The defendants assert that the plaintiff's claims for compensatory damages are barred by the Prison Litigation Reform Act ("PLRA"). *Motion*, pp. 14-15.  The PLRA provides in pertinent part:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).

Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted.  Searles v. Van Bebber, 251 F.3d 869, 876 (10th Cir 2001) (applying section 1997e(e) to the plaintiff's First Amendment claim for free exercise of religion).  Although section 1997e(e) bars recovery of compensatory damages for failure to allege physical injury, it does not bar recovery of nominal and punitive damages or declaratory or injunctive relief.  Id. at 881; Perkins

v. Kansas Dept. of Corrections, 165 F.3d 803, 808 (10th Cir. 1999).

Here, the plaintiff seeks injunctive relief and nominal damages. He also seeks "compensatory damages for expenses incurred (postage, photocopying, etc.) only," *Complaint*, p. 19, which the plaintiff has clarified is merely a request for costs. *Response to Motion to Dismiss* [Doc. #26] (the "Response"), pp. 4-5. The PLRA does not bar injunctive relief, nominal damages, or costs. The Motion should be denied insofar as it invokes the PLRA to bar compensatory damages.

## IV. CONCLUSION

I respectfully RECOMMEND that the defendants' Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) [Doc. #16] be GRANTED IN PART and DENIED IN PART as follows:

•GRANTED to the extent it seeks dismissal of the claims against the defendants in their official capacities for retroactive monetary relief based on Eleventh Amendment immunity; and

• DENIED in all other respects.[4]

---

[4]Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated October 24, 2013.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge